## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **KASONIA L. CARTER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **4:15-CV-00366-O** |
| | § | |
| **BURLINGTON NORTHERN SANTA** | § | |
| **FE, LLC, F/K/A BURLINGTON** | § | |
| **NORTHERN SANTA FE** | § | |
| **CORPORATION A/K/A** | § | **DEMAND FOR JURY TRIAL** |
| **BURLINGTON NORTHERN SANTA** | § | |
| **FE RAILWAY A/K/A BNSF,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION FOR SHOW CAUSE HEARING, CONTEMPT
AND SANCTIONS FOR SPOLIATION OF EVIDENCE AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW BNSF Railway Company ("BNSF") incorrectly named as Burlington Northern Santa Fe, LLC, f/k/a Burlington Northern Santa Fe Corporation a/k/a Burlington Northern Santa Fe Railway a/k/a/ BNSF, Defendant in the above entitled and numbered cause, and files this Motion for Show Cause Hearing, Contempt and Sanctions for Spoliation of Evidence and Brief in Support, and would show this Court the following:

## I.    INTRODUCTION

BNSF moves this Court for an appropriate order sanctioning Plaintiff and her attorney for misconduct occurring during a deposition; Plaintiff's failure to comply with her discovery preservation obligation; and her failure to turn over numerous handwritten notes she was reviewing prior to the start of her deposition but later concealed and failed to produce after being ordered to do so by this Court.

**Motion for Show Cause Hearing and Sanctions - Page 1**                    **2023557_2**

## II.    FACTUAL BACKGROUND

Plaintiff's deposition was noticed for December 16, 2015 at 10:00 a.m.  When BNSF's counsel and corporate representative entered the conference room to start the deposition, Plaintiff was sitting at the conference room table and reviewing the contents of an open manila folder containing numerous pages of handwritten notes.  [App. 1, ¶ 3].  The court reporter, Gaylord Sturgess, was present and sitting next to and facing Plaintiff as she was reviewing her notes.  [App. 2, ¶ 6].  Upon information and belief, the court reporter observed Plaintiff examining numerous pages of handwritten notes prior to the start of the deposition.[1]

The notes all appeared to be on white, lined paper.  [App. 1, ¶ 3].  At least some of the notes were not in a columnar list form but rather written across the page in paragraph, narrative form.  *Id.*  Because Plaintiff was studying these voluminous notes immediately prior to commencing the deposition, counsel for BNSF asked to review the notes prior to the start of the deposition.  Plaintiff and her lawyer refused the request, claiming the notes were "personal" and Plaintiff's counsel instructed Plaintiff to put the folder away.  At that point, Plaintiff put the folder in a black canvas bag that had BNSF's logo on it.  The deposition then commenced.

After a few introductory questions, BNSF's counsel asked Plaintiff about the contents of the manila folder:

Q:    When I walked into the deposition, you had a manila folder with, it looked like, 30 or so pages of handwritten notes.  What were those notes?

A:    Those notes were my personal business.  Grocery list, things like that.

Q:    In any of those notes, were there any references to BNSF?

A:    No.

---

[1]    BNSF intends to subpoena Mr. Sturgess to testify at the hearing requested in this Motion.

Q:          Were there any references to your employment with BNSF?

A:          No.

....

A:          The stuff in my folder is personal business.

Q:          Well, what personal business?

A:          Personal business of mine.  Grocery lists, things like that, things for me to do.

[App. 8-9 (5:17-6:2 and 7:2-5)].

Plaintiff's counsel then repeatedly interrupted BNSF's counsel's questioning and refused to allow Plaintiff to answer non-privileged questions about the contents of the folder.  [App. 10-14].  Plaintiff's counsel further represented on the record that the contents of the file had "nothing to do with BNSF in this case;" that they were Plaintiff's own personal business; and refused to allow her to answer further questions about the notes or the contents of the manila file.  *Id.*

Because Plaintiff refused to testify about the contents of the folder or the handwritten notes, BNSF's counsel (on the record) instructed Plaintiff and her lawyer to maintain that file in its then-present condition so that BNSF could seek appropriate relief from the Court.  [App. 11-12].  On at least two occasions prior to BNSF's ability to secure an emergency order from the Court, Plaintiff removed her personal belongings (including the manila folder) from the deposition room.

At the first break following the deposition questions about the file and its contents, Plaintiff's counsel left the conference room and Plaintiff followed him out, leaving her bag bearing a BNSF logo in the conference room.  [App. 3, ¶ 7].  In less than a minute, Plaintiff returned to secure her bag containing the manila folder and left both the conference room and the floor where the deposition was being conducted.  *Id*.  Plaintiff also removed her bag containing

the manila folder from the conference room during the lunch recess.  Shortly after the lunch recess, Plaintiff was presented with a copy of the Court's Order to turn over the file to the court reporter. [Clerk's Dkt No. 41; App. 14-16].

When the file was produced to the court reporter, it did not contain the numerous pages of handwritten notes that were present at the beginning of the deposition.  [Clerk's Dkt No. 42]. It contained a single, BNSF form with a short list of grocery items on the back.  *Id*. The file folder also contained the style of this case, "K Carter v. BNSF" and her EEOC filing dates. [App. 15-16].  Contrary to Plaintiff counsel's representation that the file had "nothing to do with BNSF in this case," the form was a BNSF form related to Plaintiff's employment.  [Clerk's Dkt No. 42].  Plaintiff's counsel also added a copy of Plaintiff's Complaint in this lawsuit to the file after it had been produced to the court reporter.[2]  None of the handwritten notes that were present at the start of the deposition were in the folder when it was turned over to the court reporter.[3]

Plaintiff's sworn testimony, her counsel's representations, the meager contents of the folder when it was produced to the court reporter, and Plaintiff's failure to produce the numerous pages of handwritten notes that were originally contained in the folder at the commencement of the deposition raises extremely serious issues that BNSF believes require the Court's further involvement.  First, Plaintiff and her counsel misrepresented the contents of the file folder on the record (with Plaintiff's testimony being given under oath).  Second, Plaintiff's counsel instructed Plaintiff not to answer non-objectionable, non-privileged questions regarding the folder and its contents, and obstructed Defendant's counsel's attempts to ascertain information about the folder

---

[2]    It is interesting that Plaintiff's counsel refused to allow BNSF to review the contents of the file or to have his client answer questions about its contents if, as he represented, it only contained a copy of the live Complaint and a BNSF form with a six or seven item grocery list on the back.

[3]    Given that the folder was titled "K. Carter v. BNSF," had her EEOC filing dates written on it, contained a BNSF form from her employment, and, presumably, according to Plaintiff's counsel, contained a copy of the live Complaint, Plaintiff's testimony and her lawyer's representations that the file had nothing to BNSF or the case are false.

and its contents.  Third, Plaintiff and her counsel violated the preservation instruction given to Plaintiff on the record to maintain the file in its exact condition as it existed when the deposition commenced.  Finally, and most egregiously, Plaintiff and her counsel violated the Court's Order by failing to turn over the contents of the file in its original form containing the numerous handwritten notes she was reviewing at the start of the deposition.

At a minimum, the handwritten notes on white, lined paper that Plaintiff acknowledged earlier in her testimony had been removed from the file her counsel produced to the court reporter after BNSF's instruction to preserve the integrity of the file in its original condition. When asked about the whereabouts of the handwritten notes, Plaintiff testified, in contradiction to her earlier sworn testimony, that there were "no handwritten notes" in the file, instead claiming that the manila folder only originally contained a single sheet of paper and a copy of her Complaint.  [App. 15-16 (12:9-12; 12:22-13:1)].

Defendant files this Motion asking the Court to conduct an evidentiary hearing into Plaintiff and her lawyer's conduct at the deposition, as well as their failure to produce the handwritten notes and any other file contents, and thereafter seeks an order holding Plaintiff and her counsel in contempt and awarding appropriate sanctions against them for their spoliation of evidence.  BNSF believes that the testimony of the only disinterested witness, the court reporter, will confirm the existence of numerous pages of handwritten notes in Plaintiff's original folder at the commencement of the deposition and that those notes did not appear in the file provided to him in response to the Court's Order.

### III.   ARGUMENTS & AUTHORITIES

#### A.   Federal Law Regarding Enforcement and Contempt.

Inherent in a court's authority is the power to enforce its decrees.  *Waffenschmidt v. Mackay,* 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986), *citing, United*

*States v. Hall,* 472 F.2d 261, 267 (5th Cir. 1972) ("Rule 65(d), as a codification rather than a limitation of courts' common law powers, cannot be read to restrict the inherent power of a court to protect its ability to render a binding judgment.").  Moreover, the violation of a court order is not a matter that should be taken lightly.  For example, in *Waffenschmidt,* the Fifth Circuit stated the following:

> Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender.  [Federal] courts. . . are possessed of ample power to protect the administration of justice from being thus hampered or interfered with.

*Waffenschmidt,* 763 F.2d at 716, *citing, Berry v. Midtown Service Corp.*, 104 F.2d 107, 110-11 (2d Cir. 1939).  This statement indicates the true import of a federal court order.  However, parallel with the power to make an order is the concomitant power to punish those who disobey it.  *In re Debs,* 158 U.S. 564, 594-95 (1895).

In federal court, a finding of civil contempt is within the discretion of the district court. *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987).  In exercising that discretion, the district court does not consider whether the contemnor acted in good faith when engaging in the alleged acts.  *See In re Crystal Palace Gambling Hall, Inc. v. Mark Twain Industries, Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1987) ("The proposed 'good faith' exception to the requirement of obedience to a court order has no basis in law, and we reject the invitation to create such an exception.")

Once the movant has shown that the non-movant violated the terms of the court order, the court is simply to inquire whether the non-movant took "all reasonable steps" within its power to comply.  *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989), *citing, Shuffler v. Heritage Bank,* 720 F.2d 1141, 1146-47 (9th Cir. 1983); *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir. 1976).  If the non-movant violated the court's order, and failed to take reasonable steps to

comply, then, upon hearing that party may be held in contempt once proper evidence has been submitted to the Court.

**B.**     **Plaintiff and Her Counsel Should Be Ordered to Appear and Show Cause as to Why They Should Not Be Held in Contempt and Sanctioned by the Court for Spoliation of Evidence.**

Spoliation of evidence is among the range of conduct for which a court may assess sanctions using its inherent powers. *See Hodge v. Wal–Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004) ("The imposition of a sanction ... for spoliation of evidence is an inherent power of federal courts."). "Spoliation is the destruction or material alteration of evidence or ... the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 799 (N.D. Tex. 2011) (internal quotation marks omitted).

"The party seeking the spoliation sanction bears the burden of proof." *Id.* at 800. The elements of spoliation in the Fifth Circuit are: (1) a duty to preserve the information; (2) a culpable breach of that duty; and (3) resulting prejudice to the innocent party. *See id.*; *see also Rimkus Consulting Group v. Cammarata*, 688 F.Supp.2d 598, 612–16 (S.D. Tex. 2010) (to obtain sanctions for spoliation of evidence, a party must establish that "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.").

"Courts have broad discretion in crafting a remedy that is proportionate to both the culpable conduct of the spoliating party and resulting prejudice to the innocent party," including awarding attorneys' fees, deeming certain facts admitted, giving the jury an adverse inference instruction, striking pleadings, entering a default judgment, and dismissing the case entirely.

*Ashton*, 772 F.Supp.2d at 801 (citing *Anadarko Petroleum Corp. v. Davis*, 2006 WL 3837518, at *27 (S.D. Tex. Dec. 28, 2006)). "In choosing the appropriate remedy, a court must ensure that it is no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Id.* (internal quotation marks omitted). The appropriate sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (internal quotation marks omitted).

The Fifth Circuit permits an adverse inference against a spoliating party upon a showing of bad faith or bad conduct. *Condrey v. SunTrust Bank of Ga.,* 431 F.3d 191, 203 (5th Cir. 2005). The test is whether the court, "from the fact that a party has destroyed evidence," could draw an inference "that the party did so in bad faith." *S.C. Johnson & Son, Inc. v. Louisville & Nashville Railroad Co.*, 695 F.2d 253, 258–59 (7th Cir. 1982). If a court finds that both evidence destruction and bad faith have been demonstrated, it may then infer that the evidence would be unfavorable to the destroying party if it were introduced in court. *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed. Cir. 1986).

Plaintiff and her counsel intentionally violated the Court's Order by failing to produce a complete copy of the manila folder containing documents related to her lawsuit. Despite Defendant's counsel's express instruction to preserve the manila folder and its contents, Plaintiff and her counsel acted in bad faith by deliberately and inexplicably removing handwritten notes and possibly other documents that could either support or undermine Plaintiff's claims. The evidence demonstrates that Plaintiff and/or her counsel were the last people to possess the manila folder. The totality of the circumstances establishes that Plaintiff and her counsel engaged in a

calculated attempt to mislead and obstruct the Court and Defendant, thereby depriving Defendant of the discovery of relevant documents.

Plaintiff's and her counsel's bad faith spoliation results in substantial prejudice to Defendant. It is not difficult to conclude, based upon the egregious conduct of Plaintiff and her counsel in refusing to answer questions regarding the contents of the folder, refusing to produce the contents of the folder to Defendant without a court order, and removing the handwritten notes and possibly other documents from the manila folder before turning it over to the court reporter, that a reasonable fact finder could conclude that the handwritten notes and any other spoliated documents contained information that was relevant and would have aided Defendant in defending against Plaintiff's claims. *T & E Investment Group, LLC v. Faulkner,* 2012 WL 2868556, at *18 (N.D. Tex. May 3, 2012) (noting that reasonable fact finder could conclude that party's destruction of computer justified conclusion that the computer contained information that was relevant and would not have aided spoliating party). Additionally, the fact that Plaintiff repeatedly misrepresented the contents of the manila folder as "personal" despite its obvious connection to her employment at BNSF and this litigation further supports a finding that the handwritten notes would have aided Defendant in defending against Plaintiff's claims.

Therefore, at a minimum, a spoliation instruction to the jury is warranted here. *Id.* (ordering adverse inference spoliation instruction as a result of spoliating party's bad faith destruction of computer). Defendant specifically requests that the jury be given a spoliation instruction that would entitle the jury to infer that Plaintiff intentionally spoliated the contents of the manila folder in order to conceal evidence that was unfavorable to Plaitniff. *See generally Whitt v. Stephens Cty.,* 529 F.3d 278, 284 (5th Cir. 2008). This is an appropriate remedy where, as here, a party has intentionally spoliated potentially relevant evidence. *T & E Investment Group, LLC,* 2012 WL 2868556, at *19 (noting that reasonable fact finder could conclude that

party's destruction of computer justified conclusion that the computer contained information that was relevant and would not have aided spoliating party). A spoliation instruction is no harsher than necessary to remedy the prejudice caused to Defendant when Plaintiff destroyed handwritten notes and perhaps other documents that are properly presumed to aid Defendant in defending its case. "Such an instruction will serve the important interests of deterring similar conduct, placing on Defendants the risk of any erroneous judgment, and restoring Plaintiffs to a position in which they would have been absent the bad faith spoliation." *Id.*

"Further, like an adverse inference instruction, a monetary sanction can deter spoliation and compensate the moving party for additional costs incurred." *Id.* In this case, Defendant incurred additional costs and attorney's fees in filing and prosecuting its Emergency Motion and this Motion. Thus, Defendant respectfully requests that Plaintiff and her counsel be sanctioned in an amount equal to the attorneys' fees and costs incurred by Defendant in filing and prosecuting the Emergency Motion and this Motion. Should the Court disagree with the proposed sanction, Defendant moves the Court to enter such sanctions against Plaintiff as it deems appropriate.

## IV.    CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant requests that the Court order Plaintiff and her counsel to appear at a time and place to be set by the Court, that the Court hear testimony from the disinterested court reporter as to the original contents of the manila folder, and that upon hearing, the Court find that Plaintiff and her counsel should be held in contempt of Court and levy the appropriate penalties, including but not limited to, a spoliation instruction. Defendant also prays for attorneys' fees and costs that it incurred in the preparation and prosecution of this Motion. Defendant requests such further and additional relief to which it is justly entitled, whether at law or in equity.

Respectfully submitted,

*/s/ Russell D. Cawyer*

Russell D. Cawyer
State Bar No. 00793482
Paige P. Biggs
State Bar No. 24037810
**KELLY, HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 878-3558
(817) 878-9280 (Fax)
Russell.cawyer@kellyhart.com
Paige.biggs@kellyhart.com

**ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY**

## CERTIFICATE OF SERVICE

On December 18, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

*/s/ Russell D. Cawyer*

Russell D. Cawyer

**Motion for Show Cause Hearing and Sanctions - Page 11**                    **2023557_2**