**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KASONIA L. CARTER,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | **CIVIL ACTION NO.** | |
| v. § | **4:15-CV-00366-O** | |
| § | | |
| **BURLINGTON NORTHERN SANTA** § | | |
| **FE, LLC, F/K/A BURLINGTON** § | | |
| **NORTHERN SANTA FE** § | | |
| **CORPORATION A/K/A** § | **DEMAND FOR JURY TRIAL** | |
| **BURLINGTON NORTHERN SANTA** § | | |
| **FE RAILWAY A/K/A BNSF,** § | | |
| § | | |
| **Defendant.** § | | |

**APPENDIX IN SUPPORT OF DEFENDANT'S MOTION FOR SHOW CAUSE
HEARING, CONTEMPT AND SANCTIONS FOR SPOLIATION OF EVIDENCE**

COMES NOW, Defendant BNSF Railway Company incorrectly named as Burlington Northern Santa Fe, LLC, f/k/a Burlington Northern Santa Fe Corporation a/k/a Burlington Northern Santa Fe Railway a/k/a/ BNSF and files its Appendix in Support of its Motion for Show Cause Hearing, Contempt and Sanctions for Spoliation of Evidence.

| **EXHIBIT** | **ITEM** | **PAGE NO.** |
|---|---|---|
| A | Declaration of Carolyn Ritchie dated December 18, 2015 | App. 1-3 |
| B | Excerpts from the Oral Deposition of Kasonia Carter taken on December 16, 2015 | App. 4-18 |

Respectfully submitted,

   */s/ Russell D. Cawyer*
Russell D. Cawyer
State Bar No. 00793482
Paige P. Biggs
State Bar No. 24037810
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopy: (817) 878-9280
Email: russell.cawyer@kellyhart.com
Email: paige.biggs@kellyhart.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

    On December 18, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

   */s/ Russell D. Cawyer*
Russell D. Cawyer

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KASONIA L. CARTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. |
| BURLINGTON NORTHERN SANTA | § | 4:15-CV-00366-O |
| FE, LLC, F/K/A BURLINGTON | § | |
| NORTHERN SANTA FE | § | |
| CORPORATION A/K/A | § | |
| BURLINGTON NORTHERN SANTA | § | |
| FE RAILWAY A/K/A BNSF, | § | |
| | § | |
| Defendant. | § | DEMAND FOR JURY TRIAL |

<u>DECLARATION OF CAROLYN RITCHIE</u>



| | |
|---|---|
| COUNTY OF TARRANT | § |
| | § |
| STATE OF TEXAS | § |

1. "My name is Carolyn Ritchie. I swear under the penalty of perjury that the following facts are true and correct and within my personal knowledge. I am over the age of eighteen (18) years and have never been convicted of a felony."

2. "I am a Senior General Attorney for BNSF Railway Company ('BNSF')."

3. "On December 16, 2015, I attended part of the deposition of Kasonia Carter at the Fort Worth offices of Kelly Hart & Hallman LLP. When I entered the conference room with BNSF's counsel for the commencement of the deposition of Kasonia Carter, Ms. Carter had a manila folder open in front of her that appeared to contain numerous pages of handwritten notes. The notes all appeared to be on white, lined paper. Some of the pieces of paper contained handwriting that was not in columnar list form, but rather written across the page in paragraph, narrative format.

4. "Before the deposition started, Russell Cawyer, BNSF's counsel, asked Carter and her lawyer to review the file folder and its notes. At one point during the colloquy between Plaintiff, her counsel, and Mr. Cawyer regarding the folder, Plaintiff or her counsel lifted the manila folder, which revealed that a copy of Plaintiff's complaint was lying underneath the manila folder. Plaintiff's counsel and Plaintiff refused Mr. Cawyer's request to review the file. Mr. McBeth then grabbed the folder, closed it, and placed it in or on Ms. Carter's black bag that was located on the floor behind her next to the wall. A copy of Ms. Carter's complaint was positioned beside or underneath the manila folder of handwritten notes. At all times I could see the folder and its contents while it was on the conference room table. Ms. Carter's copy of her complaint that she possessed at the deposition was not in the folder. The notes I observed were clearly not a copy of the complaint.

5. "During the deposition, Mr. McBeth and Ms. Carter represented that the folder had nothing to do with the lawsuit and merely contained personal information. Ms. Carter's counsel refused to allow BNSF's counsel to inspect the folder or its contents during the course of the deposition either on or off the record.

6. "Plaintiff's counsel repeatedly obstructed defense counsel's questioning of Plaintiff regarding the contents of the folder, refusing to allow Plaintiff to describe the contents of the folder, read the title written on the folder, or count the number of handwritten pages in the folder. The deposition transcript should reflect the questions that were asked and answers given by Ms. Carter about the contents of the folder. The court reporter, Gaylord Sturgess, was present in the conference room sitting next to Ms. Carter as she was reviewing the handwritten notes when I first entered the conference room. Mr. Sturgess was sitting approximately three feet from Ms. Carter. Mr. Sturgess was the only disinterested person in the room."

7. "About an hour into the deposition, Ms. Carter's counsel requested a break. Mr. McBeth left the conference room and Ms. Carter followed behind. After leaving the conference room with Mr. McBeth for less than a minute, Ms. Carter returned to the conference room and retrieved her bag containing the folder of handwritten notes. Once Ms. Carter left the deposition for the second time during the first break, I never saw the folder or the handwritten notes I had observed again. I did not attend the portion of the deposition where Ms. Carter turned the folder over to the court reporter, but I understand that the exchange occurred on the record."

8. "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct."

Executed on December 18, 2015.

*Carolyn Ritchie*
Carolyn Ritchie

```
                                                            Page 1

 1               IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
 2                       FORT WORTH DIVISION
 3
      KASONIA L. CARTER,          §
 4                                §
              Plaintiff           §
 5                                §
      v.                          §   CIVIL ACTION NO.
 6                                §   4:15-cv-00366-O
      BURLINGTON NORTHERN         §
 7    SANTA FE, LLC, F/K/A        §
      BURLINGTON NORTHERN         §
 8    SANTA FE RAILWAY A/K/A      §
      BNSF,                       §
 9                                §
              Defendant           §
10
     ------------------------------------------------------------
11
              EXCERPTS FROM THE ORAL DEPOSITION OF
12                   KASONIA LINNELL CARTER
                         Volume 1 of 1
13                      December 16, 2015
     ------------------------------------------------------------
14
15         EXCERPTS FROM THE ORAL DEPOSITION OF KASONIA
16   LINNELL CARTER, produced as a witness at the instance
17   of the Defendant, and duly sworn, was taken in the
18   above-styled and numbered cause on December 16, 2015
19   from 10:12 AM to 4:44 PM, before Gaylord A. Sturgess,
20   CSR No. 744, in and for the State of Texas, reported
21   by Stenographic method, at the offices of KELLY HART &
22   HALLMAN, LLP, 201 Main Street, Suite 2500, Fort Worth,
23   Texas  76102, pursuant to the Federal Rules of Civil
24   Procedure and the provisions stated on the record.
25   Job No. 2183334
```

EXHIBIT B

```
                                                              Page 2

 1                    A P P E A R A N C E S
 2    FOR THE PLAINTIFF:
 3         Hiram McBeth
           McBETH LAW OFFICE
 4         6060 North Central Expressway, Suite 560
           Dallas, Texas   75206
 5         972.498.8872
           hirammcbeth@hotmail.com
 6
 7    FOR THE DEFENDANT:
 8         Russell D. Cawyer
           KELLY HART & HALLMAN, LLP
 9         201 Main Street, Suite 2500
           Fort Worth, Texas   76102
10         817.332.2500
           russell.cawyer@kellyhart.com
11
12    and:
13         Carolyn Ritchie
           BNSF RAILWAY COMPANY
14         2500 Lou Menk Drive
           AOB-3
15         Fort Worth, Texas   76131
           817.352.2365
16         carolyn.ritchie@bnsf.com
17
18
19
20
21
22
23
24
25
```

Page 3

1         P R O C E E D I N G S
2
          EXCERPT NO. 1:
3
4            THE REPORTER:  Ms. Carter, would you
5    raise your right hand, please, and be sworn.
6            Do you solemnly swear, or affirm, the
7    testimony you shall give in this case will be the
8    truth, the whole truth, and nothing but the truth, so
9    help you God?
10           THE WITNESS:  I do.
11           THE REPORTER:  Thank you.
12           KASONIA LINNELL CARTER,
13   having been first duly sworn, testified as follows:
14                   EXAMINATION
15   BY MR. CAWYER:
16       Q.   What's your name?
17       A.   Kasonia Linnell Carter.
18       Q.   Can you spell that for me?
19       A.   K-a-s-o-n-i-a, L-i-n-n-e-l-l, C-a-r-t-e-r.
20       Q.   Have you ever had your deposition taken
21   before?
22       A.   No.
23       Q.   I'm sure your lawyer has told you, but a
24   deposition is an opportunity for me to ask you
25   questions about your lawsuit and the claims you make

1  against my client, BNSF Railway Company.  Do you
2  understand that?
3       A.   Yes.
4       Q.   And do you understand that before we began
5  your deposition, Mr. Sturgess placed you under oath?
6  Do you understand that?
7       A.   Yes.
8       Q.   And do you understand that that's the same
9  or a similar oath that you would be given if you were
10 testifying in court, in a courthouse?  Do you
11 understand that?
12      A.   Yes.
13      Q.   You understand that the penalties for
14 perjury and untruthfulness apply to the testimony that
15 you give here just as it would if we were down the
16 street in the federal courthouse?  Do you understand
17 that?
18      A.   Yeah.
19      Q.   Okay.  During the course of this deposition,
20 if I ask you a question that you are unclear about or
21 you don't understand, would you stop me and ask me to
22 repeat or rephrase my question?
23      A.   Yes.
24      Q.   The reason that that's important,
25 Ms. Carter, is:  If I ask you a question today and you

Page 5

```
 1   give me an answer, I'm going to presume that you
 2   understood my question.  Would you agree that that
 3   would be a fair presumption on my part?
 4        A.   Yes.
 5        Q.   The other thing that you need to do is -- so
 6   far you've done very well, but we need to make sure
 7   that you verbalize your answers.  Sometimes we shake
 8   our heads yes or no in response to a question, or you
 9   may say uh-huh or huh-uh.  And if you do that, I'll
10   try to get you to verbalize your answer.  I might put
11   my hand to my ear, or I might ask you to clarify your
12   answer.
13                I don't mean any disrespect by that.  I
14   just want to make sure that Mr. Sturgess can take your
15   testimony down truthfully and accurately.  Okay?
16        A.   Okay.
17        Q.   When I walked into the deposition, you had a
18   manila folder with, it looked like, 30 or so pages of
19   handwritten notes.  What were those notes?
20        A.   Those notes were my personal business.
21   Grocery list, things like that.
22        Q.   In any of those notes, were there any
23   references to BNSF?
24        A.   No.
25        Q.   Were there any references to your employment
```

```
 1   with BNSF?
 2        A.    No.
 3        Q.    Were there any references to the factual
 4   allegations that you make against my client in this
 5   lawsuit?
 6        A.    Say that again.
 7        Q.    Were there any references to any of the
 8   factual allegations that you make against my client in
 9   this lawsuit?
10        A.    Can you rephrase?
11        Q.    What part --
12        A.    I still don't understand.
13        Q.    What part do you not understand?
14        A.    Well, can you repeat it again then?
15        Q.    Sure.
16              MR. CAWYER:  Mr. Sturgess, would you
17   read it back for her.
18              THE REPORTER:  (Reading from his
19   notes):
20              Were there any references to any of the
21              factual allegations that you make
22              against my client in this lawsuit?
23        A.    Factual, I mean, I don't understand.  Are
24   you asking me what's in my folder or --
25        Q.    Well, that's one of the questions I'm asking
```

Page 7

1  you.
2       A.   The stuff in my folder is personal business.
3       Q.   Well, what personal business?
4       A.   Personal business of mine.  Grocery lists,
5  things like that, things for me to do.
6       Q.   Can you explain for the Court why you were
7  studying your grocery list minutes before beginning
8  this deposition?
9            MR. MCBETH:  Russell, I'm going to
10 object.  My client has indicated that what she has --
11           MR. CAWYER:  What's your objection;
12 what's your legal objection?
13           MR. MCBETH:  My objection is about the
14 questioning.  She has indicated that what she has --
15           MR. CAWYER:  Mr. McBeth, speaking --
16           MR. MCBETH:  -- has nothing to do with
17 BNSF in this case, her own personal stuff and that's
18 it.  And she's answered that.
19 BY MR. CAWYER:
20      Q.   My question was -- so moments before we
21 began this deposition, you had a manila folder with
22 about 30 pages of handwritten notes in front of you.
23 And it's your testimony here under oath that that was
24 your grocery list?
25      A.   Half of that list is the deposition, and

Page 8

```
 1   that list consists of -- let's see.  Well, 34, 35 --
 2   about 37 pages.  So what you saw in the folder was --
 3   the majority of it was this deposition.
 4        Q.   Well, why don't you show me the folder, and
 5   if it's not related --
 6             MR. MCBETH:  I'm not going to let her
 7   do that.  We're not going to do that, Russell.
 8             MR. CAWYER:  Can I finish my question?
 9             MR. MCBETH:  You can finish it.
10             MR. CAWYER:  Please don't interrupt me.
11             MR. MCBETH:  All right. Go ahead.
12   BY MR. CAWYER:
13        Q.   Why don't you show me those documents and
14   handwritten notes which you had in front of you when
15   we walked in to commence this deposition, and I'll
16   look at those off the record.  And if they don't have
17   anything to do with this lawsuit, then we'll move on.
18   Otherwise, then we're going to have to take this up
19   with Judge O'Connor, and just one more discovery
20   dispute which has been a continuation in this case.
21             MR. MCBETH:  We're going to have to do
22   that, Russell.
23             MR. CAWYER:  Okay.  I'm going to make
24   sure that you understand that I'm asking you to
25   preserve that manila folder and all of its contents
```

1  exactly as it exists right now.  Because when we
2  finish this deposition, or at a break in this
3  deposition, we're going to be seeking appropriate
4  relief from the Court.  Do you understand that?
5       A.   I don't understand what you mean,
6  appropriate relief from the Court.
7       Q.   Well, we're going to ask the Court to take
8  some action to force you to turn those notes over
9  or --
10      A.   Well, I believe you have a copy of the -- of
11 the discovery already.
12      Q.   I'm not talking about your complaint or your
13 discovery --
14      A.   Well, you said that there was about 30 to 35
15 pages, and this is about 37 pages.
16      Q.   Why don't you do this:  Why don't you take
17 the manila folder out, why don't you count the number
18 of handwritten pages there are.  You don't have to
19 show them to me right now.
20           MR. MCBETH:  No, she's not going to do
21 that.
22           MR. CAWYER:  Why?
23           MR. MCBETH:  What she had in there was
24 her -- a copy of the Original Petition, which she has
25 now and which I told her that she could bring if you

```
 1   had no objection.  That's what she's looking at.
 2   That's what she had.  The rest is personal information
 3   that she's not going to produce.
 4   BY MR. CAWYER:
 5        Q.   Okay.  Read for me what's on the outside of
 6   the manila folder that's --
 7                MR. MCBETH:  She's not reading anything
 8   pertaining to what's on the outside of that folder.
 9                MR. CAWYER:  Hiram, let me finish my
10   question.
11                MR. MCBETH:  That was a question?
12   Well, ask the question.
13   BY MR. CAWYER:
14        Q.   Ms. Carter, please get the manila folder out
15   that you brought with you today and that contains
16   these handwritten notes that you were reviewing before
17   your deposition and read me what's written in black
18   marker on the outside of that manila folder.
19                MR. MCBETH:  She's not going to do
20   that.
21        Q.   Okay.  Are you refusing to follow my
22   request?
23        A.   I'm working through my attorney.
24        Q.   Well, so you're refusing to comply with my
25   request?
```

Page 11

```
 1        A.   I'm working through my attorney.
 2        Q.   Next I'm going to ask you:  Please count the
 3   number of handwritten pages that are in the manila
 4   folder that you brought with you today and that you
 5   had open before we went to commence this deposition.
 6        A.   Well, you said it was between 30 and 35, so
 7   that was your speculation.  I'm not sure.
 8        Q.   You're the witness, you're under oath, and
 9   it's your testimony.  And I'm asking you, would you
10   please open the manila folder and count the number of
11   pages.
12             MR. MCBETH:  No, she's not doing that.
13        Q.   So you're refusing to comply with my
14   request?
15        A.   Working through the advice of my attorney.
16        Q.   Okay.  What's your date of birth?
17        A.   4-29-71.
18
19
20             EXCERPT NO. 2:
21
22             MR. CAWYER:  Mr. McBeth, I'm going to
23   hand you an Order that Judge O'Connor has entered, and
24   it is ordering that Ms. Carter immediately turn over
25   the manila folder and its contents in your possession
```

1  to the court reporter; and the court reporter will
2  submit the manila folder and the contents for
3  in-camera inspection to determine whether such records
4  contain relevant information or are reasonably
5  calculated to lead to the discovery of admissible
6  evidence.  I'm going to ask that you turn that folder
7  and its contents over.
8                    (Short pause.)
9                    Where are the handwritten notes that
10 were in this folder when we began the deposition?
11                   THE WITNESS:  No handwritten notes.
12 Sorry.
13                   MR. MCBETH:  Was that in there?
14                   THE WITNESS:  No, no.  I was just
15 making notes.
16                   MR. MCBETH:  Okay.
17 BY MR. CAWYER:
18     Q.   Ms. Carter, what did you do with the balance
19 of the contents of this folder that, you have written
20 on the outside is K Carter versus BNSF?
21     A.   I've always had that.
22     Q.   My question was:  Where were the handwritten
23 notes that were in this folder when we walked in to
24 begin this deposition?
25     A.   That's what I had in there, plus my

Page 13

```
 1   complaint.
 2        Q.   We'll let Judge O'Connor take it up, but
 3   this folder is K Carter versus BNSF.  This is this
 4   lawsuit, correct?
 5        A.   Correct.
 6             MR. CAWYER:  The record will reflect
 7   I'm turning over a manila folder and a single page to
 8   Mr. Sturgess.
 9             MR. MCBETH:  No, you're turning over
10   this also.  This is part of it.
11             THE WITNESS:  This and that piece of
12   paper right there.
13             MR. MCBETH:  That's what's in there.
14             And she -- and all the records, the
15   records.  And that document is the Original Petition,
16   file marked copy which I told Ms. Carter to bring to
17   this deposition for her convenience in case she was
18   asked about it.
19             Of course that duplicate has been
20   turned -- has been submitted as Depo Exhibit Number 1.
21
22                  (END OF EXCERPTS.)
23
24
25
```

```
                                                         Page 16

 1
              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF TEXAS
                    FORT WORTH DIVISION
 3
     KASONIA L. CARTER,            §
 4                                 §
            Plaintiff              §
 5                                 §
     v.                            §   CIVIL ACTION NO.
 6                                 §   4:15-cv-00366-O
     BURLINGTON NORTHERN           §
 7   SANTA FE, LLC, F/K/A          §
     BURLINGTON NORTHERN           §
 8   SANTA FE RAILWAY A/K/A        §
     BNSF,                         §
 9                                 §
            Defendant              §
10
     ---------------------------------------------------------
11
12             REPORTER'S CERTIFICATION
     EXCERPTS FROM THE DEPOSITION OF KASONIA LINNELL CARTER
13                   Volume 1 of 1
                   December 16, 2015
14
     ---------------------------------------------------------
15
          STATE OF TEXAS )
16
17             I, Gaylord A. Sturgess, a Certified
18   Shorthand Reporter in and for the State of Texas, do
19   hereby certify that, pursuant to the agreement
20   hereinbefore set forth, there came before me KASONIA
21   LINNELL CARTER, who was by me duly sworn to testify
22   the truth, the whole truth, and nothing but the truth
23   of said witness's knowledge concerning the matters in
24   controversy in this cause; and the said witness was
25   thereupon carefully examined upon said oath, and said
```

Page 17

1  examination reduced to writing under my supervision;
2  that the deposition is a true record of the testimony
3  given by said witness, same to be sworn to and
4  subscribed by said witness before any notary public,
5  pursuant to the agreement of the parties.
6              I further certify that I am neither
7  counsel for nor related to any party in this cause and
8  am not financially interested in its outcome.
9              I further certify that the taxable cost
10 for preparation of the Original deposition transcript
11 and Original exhibits, if any, is $_____ and
12 was/will be paid by Defendant.
13             GIVEN UNDER MY HAND AND SEAL of office
14 on December 16, 2015.
15
16              [signature]
17              GAYLORD A. STURGESS, CSR No. 744
                Expiration Date:  12.31.16
18              VERITEXT LEGAL SOLUTIONS
                Veritext Registration No. 571
19              300 Throckmorton Street
                Suite 1600
20              Fort Worth, Texas  76102
                817.336.3042  800.336.4000
21              Job No. 2183334
22
23
24
25