**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KASONIA L. CARTER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **4:15-CV-00366-O** |
| | § | |
| **BURLINGTON NORTHERN SANTA** | § | |
| **FE, LLC, F/K/A BURLINGTON** | § | |
| **NORTHERN SANTA FE** | § | |
| **CORPORATION A/K/A** | § | |
| **BURLINGTON NORTHERN SANTA** | § | **DEMAND FOR JURY TRIAL** |
| **FE RAILWAY A/K/A BNSF,** | § | |
| | § | |
| **Defendant.** | § | |

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SANCTIONS (CLERK'S DKT NO. 43)**

Respectfully submitted,

Russell D. Cawyer
State Bar No. 00793482
Paige P. Biggs
State Bar No. 24037810
**KELLY, HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 878-3558
(817) 878-9280 (Fax)
Russell.cawyer@kellyhart.com
Paige.biggs@kellyhart.com

**ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY**

Our justice system relies on parties' compliance with rules designed to peacefully resolve disputes while seeking the truth. Plaintiff and her counsel have repeatedly obstructed this quest for the truth, violated the Federal Rules of Civil Procedure and the lawyer's ethical duties, and demonstrated a lack of regard for the integrity of the judicial process. The Court must now decide the appropriate sanction for Plaintiff and her counsel's egregious misconduct, including: (1) refusing to answer relevant, non-privileged questions during Plaintiff's deposition; (2) refusing to provide the legal basis for counsel's instructions not to answer deposition questions; (3) failure to comply with the Court's order to produce evidence; (4) spoliation of evidence after a preservation instruction; (5) perjury in affidavit, deposition, and courtroom testimony to conceal or distract from the spoliation of evidence; and (6) the filing of a retaliatory motion for sanctions based on false allegations. (Tr.[1] 117:14-18; 122: 3-5; 127:16-21; 128:1-13).

Authority for the sanctions requested arises from Federal Rules of Civil Procedure 11, 30 and 37; 28 U.S.C. § 1927; the *Dondi* decision, and the Court's inherent power to "punish conduct which abuses the judicial process."[2] *See Chambers,* 501 U.S. at 33. While the standard for sanctions vary under each Rule, Plaintiff and her counsel's egregious misconduct warrant severe sanctions under any standard. "A decision to invoke the inherent power to sanction requires a finding of bad faith or willful abuse of the judicial process...." *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014). The court must also consider whether the requested sanction would "deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey. League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

---

[1]    "Tr." references are to the transcript of the evidentiary hearing occurring on January 14, 2016.

[2]    Rule 11 is violated when an attorney files a pleading or motion without conducting a reasonable inquiry into the facts which support the pleading or makes a motion for an improper purpose. It is an objective, not subjective standard, and no finding of bad faith is required. *See Chambers v. NASCO*, 501 U.S. 32, 47 (1991); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988). Rule 30 allows sanctions against a person who impedes, delays or frustrates the fair examination of the deponent. Rule 37 authorizes sanctions against a person for failing to comply with court orders and other discovery obligations. *Griffin v. Aluminum Co. of America*, 564 F.2d 1171, 1172 (5th Cir. 1977).

Dismissal with prejudice and monetary sanctions are appropriate where, as here, a party and her counsel intentionally spoliate evidence despite a specific instruction to preserve it, defy a court order to produce it, offer false testimony to cover up the spoliation, attempt to distract the Court and intimidate a party with a retaliatory motion for sanctions based on false allegations, and then make comments to the media designed to embarrass the opposing party and its counsel. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77-80 (5th Cir. 2011) (affirming dismissal of plaintiff's discrimination lawsuit as sanctions for giving perjured testimony); *Combs v. Rockwell Int'l Corp.,* 927 F.2d 486, 488-89 (9th Cir. 1991) (dismissing complaint as sanctions for plaintiff and attorney's falsification of deposition transcript); *Miller v. Time Warner Comms., Inc.,* 1999 WL 739528, at *1-*3 (S.D.N.Y. Sept. 22, 1999) (dismissing plaintiff's complaint as sanctions for plaintiff's willful destruction of evidence and repeated perjury to cover-up same).

The evidence and credible testimony offered at the sanctions hearing established that, prior to her deposition, Plaintiff was studying handwritten notes; when asked about the nature of the notes, she and her lawyer misrepresented the contents (Plaintiff doing so while under oath) as being "personal" and not related to her employment at BNSF or her claims in this lawsuit; she refused requests to inspect or identify the notes for later judicial review; she was instructed to preserve those notes in the folder; and she was ordered to turn over the folder and its contents. Plaintiff never turned over the notes, claiming in response to BNSF's motion and again at the hearing that the only "notes" were a six-item grocery list on the back of a BNSF form. BNSF's counsel Carolyn Ritchie and Russell Cawyer and court reporter Gaylord Sturgess --the only independent witness testifying at the hearing -- all testified that they observed Plaintiff reviewing substantial handwritten notes that covered most of at least one page of paper in the folder and that the grocery list was not the notes they observed.

Although Plaintiff denies the existence of notes other than a grocery list (Tr. 85:6-12), her testimony is not credible:

- Once Plaintiff was ordered to produce the folder, it turned out to be labeled "K. Carter v. BNSF" and its purported contents (*i.e.,* a copy of her complaint and a BNSF form with a handwritten grocery list on the back) were documents that were not merely "personal" as Plaintiff and her counsel testified or represented. (Tr. 102:4-103:4).

- Plaintiff initially confirmed the existence of notes (plural) in her deposition. (Clerk's Dkt No. 51 at 7:15-19; Tr. 99:20-101:20).

- Plaintiff denied the existence of any notes contemporaneously with turning over the folder. (Clerk's Dkt No. 51 at 130-31).

- Plaintiff falsely testified that BNSF counsel did not complain about the absence of the notes when the folder was provided to the court reporter. (Tr. 86; Clerk's Dkt No. 51 at 130-31).

- Plaintiff and her counsel repeatedly refused to provide or allow inspection the file and its purportedly innocuous and irrelevant contents to Defendant's counsel.

- When questioned by the Court, Plaintiff and her counsel had no credible explanation for why they would go to such great lengths and waste valuable judicial resources to avoid inspection or production of a grocery list.

- Plaintiff and Mr. McBeth were evasive in their responses to questions at the hearing.

The only reasonable inference to be drawn is that the folder titled "K. Carter v. BNSF" contained notes and other information that would undermine and be potentially fatal to Plaintiff's claims or helpful to BNSF's defenses if produced. Because of Plaintiff and her lawyer's repeated misconduct, it is unclear the full damage and prejudice BNSF will suffer as a result of the spoliation. Plaintiff's misconduct and failure to cooperate in discovery by allowing an inspection of the notes and refusal to answer non-privileged questions about the notes cannot be used as a shield against sanctions that were appropriately sought.

Plaintiff's lack of credibility is also evidenced by her affidavit containing false factual

allegations of sexual harassment.[3] (Tr. 117: 14-18). Plaintiff's counsel Hiram McBeth violated his ethical obligations, including his duty of candor to the Court and his Rule 11 obligation, when he filed an affidavit that he knew or reasonably should have known contained false allegations including, but not limited to, the allegation that Plaintiff was sexually harassed and that she was asked repeatedly during her deposition to empty the contents of her purse. (*Id.* at 122: 3-5; 127:16-21; 128:1-13). Mr. McBeth's bad faith is further evidenced by his refusal to retract the allegations of sexual harassment after his client recanted. (Tr. 121:20-128:19).

Plaintiff's failure to identify any specific conduct by Defendant's counsel on the record supporting her sanctions motion casts further doubt on her credibility. (*Id.* at 122: 3-5; 127:16-21; 128:1-13). Indeed, while Plaintiff (under oath) and her counsel claim that Defendant's counsel made repeated demands to inspect the contents of her handbag/purse, the deposition transcript is devoid of any reference to these alleged demands. (*Id.* at 111:4-12; 118:3-12).

Plaintiff's court testimony is further contradicted by her sworn testimony in deposition and she even admitted that portions of her affidavit and deposition testimony were untrue. For example, Plaintiff testified in the hearing that her counsel commented to BNSF counsel that he did not like the way he was speaking to the Plaintiff and that this comment was made on the record. (Tr. 119:2-13). The deposition transcript reveals no such comment by Plaintiff's counsel. (*Id.* at 118:13-119:15). Similarly, the deposition transcript is devoid of any requests or demands to inspect or have Plaintiff empty her purse as she testified in court. (*Id.* at 119:4-9).

---

[3]     Because of Plaintiff and her lawyer's false allegations of sexual harassment, twice published online by the *Texas Lawyer*, BNSF counsel Russell Cawyer has had to respond to inquiries from colleagues, clients and family members. The damage to Mr. Cawyer's reputation due to these false accusations, which Mr. McBeth refused to withdraw even in the face of his client's recantation, is difficult if not impossible to fully calculate. Tr. 125-31. Mr. McBeth and his client's false allegations, submitted to this Court in a sworn affidavit, further justifies the most severe of sanctions. Both Plaintiff and Mr. McBeth should bear the sanctions -- Plaintiff for writing and swearing to the false allegations and Mr. McBeth for failing to investigate the veracity of the allegations and for filing the affidavit even though he knew or reasonably should have known that such allegations were false. This conduct raises significant questions about Mr. McBeth's fitness to practice in the Northern District of Texas. BNSF leaves it to the Court's discretion as to whether Mr. McBeth should be further sanctioned or disciplined outside of this proceeding.

The credible evidence establishes that Plaintiff and her counsel have engaged in bad faith conduct and abused the judicial process. Given their persistent, unyielding disregard for the truth and the integrity of the judicial system, their discovery obligations or oath, and their decision at every turn to continue and, indeed, escalate, their misconduct following the initial refusal to allow questions and inspection of the notes, dismissal of Plaintiff's Complaint with prejudice is warranted. No lesser sanctions will appropriately punish the Plaintiff and deter others from future misconduct. *Brown*, 664 F.3d at 77-80 (affirming dismissal of lawsuit as sanctions for giving perjured testimony); *Miller,* 1999 WL 739528, at *1-3 (dismissing complaint as sanctions for destruction of evidence and perjury regarding same).

Plaintiff and her counsel's misconduct and perjury were not limited to a conference room in a lawyer's office -- though that alone would be serious misconduct. They brought their disregard for their oath to tell the truth into the courtroom where Plaintiff seeks to have her claims adjudicated. In fact, following Defendant's filing of its sanctions motion, Plaintiff and her counsel not only perpetuated the misrepresentations made at the deposition, they made further misrepresentations when filing a baseless sanctions motion and false affidavit against defense counsel. This blatant and repeated bad faith conduct demonstrates total disrespect for the Court and the civil justice system.

BNSF requests that the Court recommend dismissal of Plaintiff's claims in their entirety. No lesser sanction will adequately punish Plaintiff and her lawyer's misconduct and deter others from engaging in similar misconduct. BNSF also requests attorneys' fees and costs that it incurred in the prosecution of its motion for sanctions and in defending against Plaintiff's unfounded sanctions motion.[4] BNSF requests such further relief (including lesser sanctions) to which it is justly entitled, whether at law or in equity and which the Court deems appropriate.

---

[4]     Defendant requests fourteen (14) days to provide evidence of its attorney's fees and costs following the Court's ruling on this Motion.

Respectfully submitted,

_____/s/ Russell D. Cawyer_____
Russell D. Cawyer
State Bar No. 00793482
Paige P. Biggs
State Bar No. 24037810
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 878-3558
(817) 878-9280 (Fax)
Russell.cawyer@kellyhart.com
Paige.biggs@kellyhart.com

**ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY**


**<u>CERTIFICATE OF SERVICE</u>**

On January 18, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

_____/s/ Russell D. Cawyer_____
Russell D. Cawyer